UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

ACE FIRE UNDERWRITERS INSURANCE
COMPANY,

       Plaintiff,

  v.                                                 Case No. 1:12-cv-01129 KG/RHS

DAVE ROMERO, JR. as Personal Representative
of the Wrongful Death Proceedings of
JOSE A. (Felix) CHAVEZ, Deceased;
ISABEL CHAVEZ, individually,
BRANDON CHAVEZ, individually
LUIS GUTIERREZ, individually, and
TIFFANY FISHER, individually,

       Defendants.

_____

DAVE ROMERO, JR. as Personal Representative
of the Wrongful Death Proceedings of
JOSE A. (Felix) CHAVEZ, Deceased;
ISABEL CHAVEZ, individually,
BRANDON CHAVEZ, individually
LUIS GUTIERREZ, individually, and
TIFFANY FISHER, individually,

       Defendants/Counter-Plaintiffs,

  v.

ACE FIRE UNDERWRITERS INSURANCE
COMPANY,

       Plaintiff/Counter-Defendant.

MEMORANDUM OPINION AND ORDER

On November 16, 2012, Defendants filed a Motion for Summary Judgment. (Doc. 7). On January 18, 2013, Plaintiff (ACE) filed a Cross-Motion for Summary Judgment and Response to Defendants' Motion for Summary Judgment. (Doc. 20). On February 1, 2013, Defendants filed a

Response to Plaintiff's Cross-Motion for Summary Judgment and a Reply to Plaintiff's Response. (Doc. 21). On February 21, 2013, ACE filed a Reply in Support of its Cross-Motion for Summary Judgment. (Doc. 24). On October 15, 2013, the Court stayed the case until it resolves the pending summary judgment motions. (Doc. 28). For the following reasons, Defendants' Motion for Summary Judgment is denied and ACE's Cross-Motion for Summary Judgment is granted.

I. Background

    A. *Plaintiff's Complaint for Declaratory Judgment and Defendants' Counterclaim (Docs. 1 and 11)*

This is an action solely for declaratory relief to determine the available limits of primary liability insurance, Policy No. CA-188726 (the Policy), issued by ACE to Finney Farms, Inc. (Finney Farms) to insure a tractor and trailer owned by Finney Farms. An accident occurred between an automobile and Finney Farms' trailer, which became detached from Finney Farms' tractor. The driver of the automobile died as a result of the accident, and Defendants sued Finney Farms and the driver of the tractor for damages caused by the accident. The parties to that lawsuit settled, and ACE provided $1,000,000 to Defendants under the Policy. Pursuant to the terms of the settlement agreement, on November 1, 2012, ACE filed its Complaint for Declaratory Judgment against Defendants. ACE's Complaint contains a single Count requesting that the Court enter a declaratory judgment declaring that: (1) the Policy provides liability coverage in the amount of $1,000,000 per accident; (2) the total amount of coverage applicable under the Policy to the accident at issue in this suit is $1,000,000 regardless of the number of vehicles involved; (3) the policy limitation of liability is clear and unambiguous, limiting coverage to $1,000,000; and (4) the parties have specifically agreed that the sole issue to be

resolved in this lawsuit is whether the amount of the Policy is limited to $1,000,000 and no other relief would be appropriate.

On December 13, 2012, Defendants filed a Counterclaim which does not contain a prayer of relief. The Counterclaim, however, argues that Finney Farms could have reasonably relied on the Policy's language and reasonably expected that the tractor and trailer insured under the Policy would each have $1,000,000 in insurance coverage. Therefore, the Court presumes that Defendants' Counterclaim effectively requests that the Court enter a declaratory judgment declaring that the total amount of coverage applicable to the accident under the Policy is $2,000,000.

### B. *Defendants' Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment*

Defendants move for summary judgment on the only count in ACE's Complaint. Defendants argue that (1) New Mexico and federal law establish that tractors and trailers are two separate vehicles and each must carry liability insurance; (2) the unambiguous language of the Policy provides for $1,000,000 coverage for the tractor and $1,000,000 coverage for the trailer; and (3) federal public policy precludes the Form MCS-90 Endorsement from limiting an insurance policy to a combined single limit of $1,000,000 per accident, regardless of the number of covered vehicles involved in the accident.

On January 18, 2013, ACE filed a Cross-Motion for Summary Judgment. In its Cross-Motion for Summary Judgment, ACE argues that the Policy's unambiguous terms limit ACE's liability to $1,000,000 per accident and the limitation does not violate the Form MCS-90 Endorsement.

C.  *Summary of Undisputed Material Facts*

1.  *Accident and settlement*

The facts regarding the accident and settlement involved in this case are undisputed.[1] In the early morning of March 24, 2011, Jessie Hale, an employee of Finney Farms, left the Finney Farms commercial business driving a tractor with an attached trailer. (Doc. 16) at 2-3. Under the Policy, ACE insured the tractor and trailer being operated by Mr. Hale. (Doc. 6-1). As Mr. Hale drove onto U.S. Route 60, the trailer became detached from the tractor and settled on a lane of the highway. *Id.* at 3. Upon learning that the trailer detached, Mr. Hale decided to make a U-turn in order to drive back around the Finney Farms' property to get behind the dropped trailer to illuminate it. *Id.* Mr. Hale thus left his trailer on the highway, unlit. *Id.*

Sometime between 5:15 a.m. and 5:30 a.m., Jose A. (Felix) Chavez was driving his vehicle on U.S. Route 60. *Id.* Apparently, while Mr. Hale drove around Finny Farms' property, Mr. Chavez's vehicle struck the unlit trailer and went off into an adjacent field. *Id.* Subsequently, another tractor-trailer collided with the trailer, and for over an hour no one was aware that Mr. Chavez had struck the trailer. *Id.* Mr. Chavez was later found inside his vehicle and declared dead at the accident scene. *Id.* Mr. Chavez's vehicle did not strike the tractor driven by Mr. Hale. *Id.*

On August 1, 2011, Defendants filed a Complaint in the Fourth Judicial District Court, County of San Miguel, State of New Mexico, seeking damages for wrongful death against Finney Farms and Mr. Hale. (Doc. 20-5) at 4. The parties to that case settled. *Id.* Pursuant to the settlement agreement, ACE provided Defendants $1,000,000 toward coverage available under the Policy. *Id.* at 5. ACE also provided Defendants $1,000,000 of coverage under a separate

---

[1] The facts regarding the accident are gathered from the Stipulated Facts in the Joint Status Report. (Doc. 16).

excess policy clause.[2] *Id.* ACE, therefore, has provided Defendants a total of $2,000,000 of coverage relating to the accident. ACE filed this lawsuit pursuant to language in the settlement agreement which stated that

> [ACE] shall promptly file a Declaratory Judgment Action in the United States District Court for the District of New Mexico … seeking a determination/declaration from the Court as to whether Policy No. CA-188726 provided either $1,000,000 or $2,000,000 in coverage for the claims asserted against [ACE and Mr. Hale] in the Lawsuit. … If the United States District Court for the District of New Mexico determines that the policy limit for Policy No. CA-188726 are $2,000,000, then ACE shall make an additional lump sum case payment of Five Hundred Fifty Thousand and 00/000 ($550,000) to [Defendants].

*Id.* at 8-9. Therefore, what is at issue in this case is whether ACE's liability to Defendants under the Policy for the accident involving Mr. Chavez is $1,000,000 or $2,000,000.

      2.   *The Policy*

The Policy provided Commercial Auto coverage to Finney Farms, effective September 20, 2010, to September 20, 2011. (Doc. 1-1) at 20. "Jesse Hale" is a listed driver on the Policy. (Doc. 6-1) at 5. The tractor and trailer involved in the accident are identified and separately listed on Item Three of the Policy, "Schedule of Covered Autos You Own," at Lines 38 (trailer) and 49 (tractor). (Doc. 1-1) at 31, 35. Finney Farms paid separate premiums for the tractor and the trailer. *Id.*

The Policy's Declarations, under Item Two, "Schedule of Coverages and Covered Autos," specifies that coverage under the Policy applies only to specifically described autos, hired autos, and non-owned autos. *Id.* at 21. The "Schedule of Coverages and Covered Autos" also specifies that the Policy provides liability coverage of $1,000,000, under the heading

---

[2] ACE's liability to Defendants under the separate excess policy clause is not at issue in this case.

"LIMIT THE MOST WE[3] WILL PAY FOR ANY ONE ACCIDENT OR LOSS." *Id.* (emphasis added). That provision is set forth in a chart, as follows:

**ITEM TWO**

**SCHEDULE OF COVERAGES AND COVERED AUTOS**

This policy provides only those coverages where a charge is shown in the premium column below. Each of the coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form shows which autos are covered autos) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| LIABILITY | 7  8  9 | $1,000,000 | $11,026 |
| PERSONAL INJURY PROTECTION (or equivalent No Fault Coverage) | | SEPARATELY STATED IN EACH PIP ENDORSEMENT<br>$           Ded. | |
| ADDED PERSONAL INJURY PROTECTION (or equivalent Added No Fault Coverage) | | SEPARATELY STATED IN EACH ADDED PIP ENDORSEMENT | |

*Id.* at 21.

Later in the Policy, under the heading "Business Auto Coverage Form, Section II – Liability Coverage," the Policy states:

> C. Limits of Insurance
>
> Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

(Doc. 1-2) (emphasis added) at 21. Under the Policy, "Auto" means "[a] land motor vehicle, 'trailer' or semitrailer designed for travel on public roads." *Id.* at 26. The Policy also defines "Accident" as "continuous or repeated exposure to the same condition resulting in 'bodily injury' or 'property damage.'" *Id.*

---

[3] The term "we" in the Policy refers to ACE.

In addition to the Policy, Finney Farms and ACE entered into a Form MCS-90 Endorsement. (Doc. 1-2) at 2. The Form MCS-90 Endorsement amends the Policy and states:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.

*Id.* Under the Form MCS-90 Endorsement heading "SCHEDULE OF LIMITS – *PUBLIC LIABILITY*," ACE agreed to provide coverage of $750,000 for the type of carriage involving "For-hire (In interstate or foreign commerce, with a gross vehicle weight rating of 10,001 or more pounds)." *Id.* at 3. Finney Farms' tractor and trailer at issue in this case fall into this category. *See* (Doc. 6).

*II. Standard of Review*

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).[4] When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Securities, Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  An issue of material fact is

---

[4] Rule 56 was amended effective December 1, 2010, but the standard for granting summary judgment remains unchanged.

genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted). The non- moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

*III. Discussion*

"It is well settled that, absent a statute to the contrary, insurance contracts are construed by the same principles which govern the interpretation of all contracts." *Rummel v. Lexington Ins. Co.*, 1997-NMSC-041, ¶ 18, 945 P.2d 970 (citation and quotation omitted). A court must "consider the plain language of the relevant provisions, giving meaning and significance to each word or phrase within the context of the entire contract, as objective evidence of the parties' mutual expression of assent." *United Nuclear Corp. v. Allstate Ins. Co.*, 2011-NMCA-039, ¶ 11, 252 P.3d 798 (internal quotation marks omitted). "Any ambiguity in the insurance policy will be construed against the insurer so as to resolve any coverage issue in favor of the insured." *Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 25, 12 P.3d 960 (internal quotation marks omitted). "[A]n ambiguity does not exist merely because the parties disagree as to the meaning of a particular word" or on the construction to be given to the contract. *Slack v. Robinson*, 134 N.M. 6, 8 (N.M. Ct. App. 2003). When language contained in a policy is unambiguous, New Mexico courts "will not strain the words to encompass meanings they do not clearly express." *Gonzales v. Allstate Ins. Co.*, 122 N.M. 137, 141, 921 P.2d 944, 948. Finally, "[a]bsent ambiguity, provisions of [an insurance] contract need only be applied, rather than construed or interpreted." *Richardson v. Farmers Ins. Co. of Ariz.,* 112 N.M. 73, 74, 811 P.2d 571, 572 (1991). Whether an ambiguity exists is a matter of law to be decided by the Court. *Id.*

A. *The Policy unambiguously limits ACE's liability to $1,000,000 per accident regardless of the number of covered autos involved in the accident*

The unambiguous terms of the Policy demonstrate that Finney Farms purchased from ACE primary liability insurance coverage of $1,000,000 for covered autos on a per accident basis. Specifically, Item Two, in the "Schedule of Coverages and Covered Autos," of the Policy Declarations explains that $1,000,000 is the most that ACE will pay for any one accident or loss. This is reiterated in the Limits of Insurance provision, which plainly provides that regardless of the number of covered autos involved in an accident, the most ACE will pay for in any one accident is the amount listed in the Policy Declarations, *i.e.*, $1,000,000. Reading the above Policy provisions together, it is clear that the Policy limits coverage to $1,000,000 per accident, even if there were multiple covered autos or multiple vehicles involved in a single accident.

Case law supports this reading of the Policy as well. In *Carolina Cas. Ins. Co. v. Estate of Karpov*, the Seventh Circuit Court of Appeals reviewed an insurance policy covering a tractor-trailer which contained language identical to the language in the Policy under the Limit of Insurance provision. 559 F.3d 621, 623 (7th Cir. 2009). Additionally, the insurance policy listed $1,000,000 under the heading "LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS," exactly the same as the Policy in this case. *Id.* The court held that the insurance policy "clearly and expressly limited [the insurance company's] liability to a maximum of $1,000,000 per accident." *Id.* at 625. *See also McComb v. Nat'l Cas. Co.*, 2013 WL 5874562 (N.D. Ill.) (holding that language identical to Policy's Limits of Insurance provision clearly limited insurance company's liability "stemming from a single accident no matter how many insureds are involved").

Notwithstanding the unambiguous per accident coverage limit, Defendants argue that the Policy's liability limitation violates the Form MCS-90 Endorsement and public policy. A Form

MCS-90 Endorsement is a federally mandated endorsement to motor carrier insurance policies. *See* 49 C.F.R. § 387.7(a) ("[n]o motor carrier shall operate a motor vehicle until the motor carrier has obtained and has in effect the minimum levels of financial responsibility as set forth in § 387.9 of this subpart."); 49 C.F.R. § 387.7(d) (proof of required financial responsibility consists of Form MCS-90 Endorsement issued by insurer). Every insurer must use this endorsement or equivalent language. *Am. Inter-Fidelity Ex. v. Am. Re-Ins. Co.*, 17 F.3d 1018, 1021 (7th Cir. 1994). Submitting the Form MCS-90 Endorsement indicates that a commercial motor carrier is in compliance with the federal financial responsibility requirements of the Motor Carrier Act of 1980.

The minimum level of financial responsibility under the Motor Carrier Act of 1980 for interstate carriers of nonhazardous property is $750,000. 49 C.F.R. § 387.9 (containing the Schedule of Limits for Public Liability); 49 U.S.C. § 31139(b) (setting minimum level of financial responsibility that Secretary must prescribe in its regulations at $750,000). The $750,000 financial responsibility guaranteed by the Form MCS-90 Endorsement is on a per accident basis. *Carolina Cas. Ins. Co.*, 559 F.3d at 624-25 (7th Cir. 2009). By this endorsement the insurer promises to pay the full judgment up to the regulatory minimum. *Empire Fire & Marine Ins. Co. v. Guaranty Nat'l Ins. Co.*, 868 F.2d 357 (10th Cir. 1989)). The Tenth Circuit Court of Appeals has interpreted the Form MCS–90 Endorsement as only applying where: "(1) the underlying insurance policy to which the endorsement is attached does not provide coverage for the motor carrier's accident, and (2) the motor carrier's insurance coverage is either not sufficient to satisfy the federally-prescribed minimum levels of financial responsibility or is non-existent." *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 871 (10th Cir. 2009).

As noted above, the financial responsibility guaranteed by the Form MCS-90 Endorsement in this case is $750,000 per accident. Here, the undisputed amount tendered from ACE to Defendants pursuant to the terms of the parties' settlement agreement was $1,000,000 under the Policy and an additional $1,000,000 under the excess policy clause, totaling $2,000,000. Thus, there is no basis on which the Form MCS-90 Endorsement could be applied in this case, as ACE has provided Defendants with a total of $2,000,000, over twice the minimum federally-prescribed level of financial responsibility, *i.e.*, $750,000. Thus, the Policy's limit on liability does not violate the Form MCS-90 Endorsement.

Finally, Defendants argue that the Policy's limit of liability violates New Mexico statutory law and public policy. "Insurance policies are contracts and as such they may include exclusionary policy language as long as the terms are clear and do not conflict with public policy as embodied by express statutory language or by legislative intent." *Dominguez v. Dairyland Ins. Co.*, 1997-NMCA-065, ¶ 13, 123 N.M. 448. Defendants argue that the Policy conflicts with New Mexico's public policy under the New Mexico Motor Carrier Act, which states, "It is the policy of this state to foster the development, coordination and preservation of a safe, sound and adequate motor carrier system, requiring financial responsibility and accountability on the part of motor carriers through state licensing and regulation of motor carriers." NMSA 1978, § 65-2A-2. The Court finds that the Policy does not conflict with New Mexico's public policy. Under the Policy, both the tractor and trailer had proof of financial responsibility, and, when Mr. Chavez died after striking the detached trailer, the Policy and the separate excess policy clause provided a total of $2,000,000 in coverage to the Defendants, well above the amount of coverage required in the federal Motor Carrier Act of 1980. The Court, therefore, finds as a matter of law that the

Policy unambiguously limits ACE's liability to $1,000,000 per accident regardless of the number of covered autos involved in the accident.

    *B. Applying the provisions of the Policy*

Because the Policy is unambiguous, the provisions of the Policy must be applied to the facts in this case. Although the facts regarding the accident that killed Mr. Chavez are undisputed, the parties disagree over whether the tractor was involved in the accident. ACE argues that "in order to even argue that multiple limits apply, the tractor would have had to been involved in the accident as something other than the power unit for the trailer." (Doc. 20) at 17. Defendants "disagree that simply because the tractor driven by Jessie Hale was admittedly not struck by the Chavez vehicle, that this also means for purposes of insurance coverage under [the Policy], that the tractor was not involved in the collision." (Doc. 21) at 2. The parties, however, agree that the incident on March 24, 2011, constitutes a single accident. *See* (Docs. 6 and 20). The Court will refrain from deciding whether the tractor was involved in the accident because the unambiguous language of the Policy limits ACE's liability to $1,000,000 per accident whether one or two covered autos were involved. Consequently, the Court finds that as a matter of law, ACE's liability to Defendants for the March 24, 2011, accident is $1,000,000.

    IT IS ORDERED that

    (1) Defendants' Motion for Summary Judgment (Doc. 7) is denied;

    (2) Plaintiff's Cross-Motion for Summary Judgment (Doc. 20) is granted;

    (3) Defendants' Counterclaim will be dismissed with prejudice; and

    (4) declaratory relief will be granted in Plaintiff's favor.

                                                                           UNITED STATES DISTRICT JUDGE