UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ACE FIRE UNDERWRITERS INSURANCE
COMPANY,

    Plaintiff,

vs.                                                                            Case No. 1:12-cv-01129 KG/RHS

DAVE ROMERO, JR. as Personal Representative
of the Wrongful Death Proceedings of
JOSE A. (Felix) CHAVEZ, Deceased;
ISABEL CHAVEZ, individually,
BRANDON CHAVEZ, individually
LUIS GUTIERREZ, individually, and
TIFFANY FISHER, individually,

    Defendants.
_____
DAVE ROMERO, JR. as Personal Representative
of the Wrongful Death Proceedings of
JOSE A. (Felix) CHAVEZ, Deceased;
ISABEL CHAVEZ, individually,
BRANDON CHAVEZ, individually
LUIS GUTIERREZ, individually, and
TIFFANY FISHER, individually,

    Defendants/Counter-Plaintiffs,

vs.

ACE FIRE UNDERWRITERS INSURANCE
COMPANY,

    Plaintiff/Counter-Defendant.

MEMORANDUM OPINION AND ORDER

On February 28, 2014, Defendants filed a Motion to Reconsider. (Doc. 31). On March 14, 2014, Plaintiff responded, and on March 25, 2014, Defendants filed a reply. (Docs. 32 and 33). Having reviewed the briefs and relevant law, the Motion to Reconsider is granted.

*A. Background*

    *1. The Lawsuit*

This is an action solely for declaratory relief to determine the available limits of primary liability insurance, Policy No. CA-188726 (the Policy), issued by Plaintiff to Finney Farms, Inc. (Finney Farms) to insure a tractor and trailer owned by Finney Farms.  On March 24, 2011, an accident involving an automobile driven by Jose A. (Felix) Chavez and the Finney Farms trailer driven by Jesse Hale, an employee of Finney Farms.  The accident occurred when the trailer unhitched from the Finney Farms tractor.  On November 1, 2012, Plaintiff filed a Complaint for Declaratory Judgment against Defendants requesting that the Court enter a declaratory judgment declaring that the total amount of coverage applicable under the Policy for any accident is $1,000,000 regardless of the number of covered autos involved.  (Doc. 1).  On December 13, 2012, Defendants filed a Counterclaim effectively requesting that the Court enter a declaratory judgment declaring that the total amount of coverage applicable to the accident under the Policy is $2,000,000; that is, $1,000,000 for the tractor and $1,000,000 for the trailer.  (Doc. 11). Defendants and Plaintiff filed cross-motions for summary judgment on the issue of the liability limits available under the Policy.  (Docs. 7 and 20).

    *2. Memorandum Opinion and Order (MOO) and Summary Judgment in Favor of Plaintiff and Declaratory Judgment (Order) (Docs. 41 and 42)*

On January 31, 2014, the Court entered the MOO, holding that "the Policy unambiguously limits [Plaintiff's] liability to $1,000,000 per accident regardless of the number of covered autos involved in the accident."  (Doc. 29) at 11-12.  Furthermore, the Court (1) denied Defendants' Motion for Summary Judgment, (2) granted Plaintiff's Cross-Motion for Summary Judgment, (3) dismissed Defendants' Counterclaim with prejudice, and (4) granted declaratory relief in Plaintiff's favor.  The Court also entered the Order, declaring that "the total

amount of liability coverage applicable under [the Policy] is $1,000,000 per accident regardless of the number of covered 'autos' involved in the accident." (Doc. 29) at 2.

### 3. *Defendants' Motion to Reconsider*

In their Motion to Reconsider, Defendants request that the Court reverse its ruling in the MOO and Order and enter a declaratory judgment declaring that the Policy provides coverage of $1,000,000 per covered auto even if multiple covered autos are involved in an accident. Further, Defendants request the Court to declare that the Finney Farms tractor and trailer both were involved in the March 24, 2011, accident, and, therefore, Plaintiff's liability for the accident under the Policy is $2,000,000. Alternatively, Defendants request that the Court certify the issue to the New Mexico Supreme Court for consideration.

Defendants primarily rely on a New Mexico Court of Appeals Case, *Lucero v. Northland Ins. Co.*, to argue that the Policy provides coverage of $1,000,000 per covered auto involved in an accident. 2014 WL 834831 (N.M. Ct. App). The *Lucero* case was published on February 24, 2014, nearly a month after the Court entered the MOO and Order. *Lucero* involved an automobile accident between a tractor, trailer, and an automobile driven by the plaintiff. *Id.* at *1. The defendant insured the tractor and trailer under one insurance policy with liability limits of $1,000,000 on each vehicle. *Id.* The *Lucero* Court considered whether the insurance policy's anti-stacking clause restricted liability coverage to $1,000,000 for the accident where two covered vehicles were involved. *Id.*

The insurance policy's declarations page stated, in relevant part: "This policy provides only those coverages where a charge is shown in the premium column below.  Each of these coverages will apply only to those 'autos' shown as Covered 'Autos.'" *Id.* The insurance policy's declaration page showed that a premium was paid for both the tractor and trailer. *Id.*

The declaration page also showed combined bodily injury and property damage liability coverage with limits of liability in the amount of "[$1,000,000] each 'accident'." *Id.* The insurance policy explained the liability coverage as follows: "We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" *Id.*

The insurance policy also contained a liability limiting provision, providing: "Regardless of the number of covered 'autos', 'insureds', premiums paid, claims made or vehicles involved in the 'accident', the most we will pay for the total of all damages ... combined, resulting from any one 'accident' is the Limit of Insurance for Liability Coverage shown in the Declarations." *Id.* at *2. The *Lucero* Court referred to this provision as the "anti-stacking clause" because "the concept of stacking involves the aggregation of policy limits applicable to multiple insured vehicles and because this provision seeks to preclude such aggregation." *Id.* (citation omitted).

The *Lucero* Court focused on the interpretation of the anti-stacking clause. The plaintiff argued that the anti-stacking clause only applied when the insured attempted to aggregate the liability limit of a covered vehicle involved in an accident with the liability limits of other covered vehicles not involved in the same accident. *Id.* The plaintiff further argued that the tractor and trailer were both involved in the accident. *Id.* The plaintiff contended, therefore, that the insurance policy's anti-stacking clause did not apply, and the insurance policy provided $2,000,000 in coverage, $1,000,000 in liability coverage each for the tractor and trailer. *Id.* The defendant argued that the insurance policy limited liability coverage to $1,000,000 per accident regardless of the number of covered vehicles involved, and that, "if there were any doubt about

4

this, the anti-stacking clause in the policy established that only one liability coverage in the amount of $1 million would be available for any single accident." *Id.*

Based on the relevant provisions of the insurance policy, the *Lucero* Court found that the insurance policy was ambiguous because, "on the one hand, the liability coverage provisions state that each covered vehicle is entitled to $1 million in coverage, and, on the other hand, the anti-stacking clause (if interpreted as the defendant urges) eliminates the $1 million in liability coverage applicable to one of the covered vehicles involved in the accident." *Id.* at *6. Construing the ambiguity against the defendant, the *Lucero* Court held that the anti-stacking clause limited the defendant's liability to $1,000,000 when "only one covered vehicle was involved in the accident." *Id.* at *5-6. However, when multiple covered vehicles are involved in the same accident, the anti-stacking clause did not apply, and the liability limits of the involved covered vehicles could be aggregated. *Id.* Therefore, the defendant's liability for the accident involving the tractor and trailer was $2,000,000; that is, $1,000,000 for the tractor and $1,000,000 for the trailer. *Id.*

Plaintiff makes two primary arguments against Defendants' Motion to Reconsider. First, Plaintiff argues that the New Mexico Court of Appeals' decision in *Lucero* is not binding authority on the Court, and the Court should not alter its ruling in the MOO. Second, Plaintiff contends that, if the Court follows *Lucero*, the Policy's anti-stacking clause applies to this case to restrict liability coverage to $1,000,0000 because only one covered auto, the Finney Farm tractor, was involved in the March 25, 2011, accident.

B. *Standard of Review*

The Federal Rules of Civil Procedure do not recognize a motion to reconsider. Therefore, the Court must construe a motion to reconsider in one of two ways: if the motion is

5

filed within twenty-eight[1] days of the district court's entry of judgment, it is treated as a motion to alter or amend the judgment. *See Hawkins v. Evans*, 64 F.3d 543, 546 (10th Cir. 1995) (citing Fed. R. Civ. P. 59(e)). When it is filed more than twenty-eight days after entry of judgment, it is treated as a motion for relief from judgment. *Id.* (citing Fed. R. Civ. P. 60(b)). In this case, Defendants' Motion to Reconsider was filed exactly twenty-eight days after the MOO and Order. Therefore, the Court construes Defendants' motion as one seeking relief under Rule 59(e).

Appropriate grounds for a Rule 59(e) motion include "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). A Rule 59(e) motion is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. *Id.* Rule 59(e) may not be used to re-litigate old matters, or raise arguments or present evidence that could have been raised prior to the entry of judgment. S*ee Steele v. Young*, 11 F.3d 1518, 1520 n.1 (10th Cir. 1993).The district court is vested with considerable discretion in determining whether to grant or deny a Rule 59(e) motion. *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997).

*C. Discussion*

To resolve Defendants' Motion to Reconsider, the Court must determine (1) whether to apply the New Mexico Court of Appeals' holding in *Lucero*; (2) if so, whether Plaintiff insured the Finney Farm tractor and trailer under the Policy for $1,000,000 each; and (3) if Plaintiff insured the Finney Farm tractor and trailer for $1,000,000 each, whether both the tractor and trailer were involved in the March 24, 2011, accident.

---

[1] Effective December 1, 2009, Rule 59 was amended to allow up to twenty-eight days to file a motion to alter or amend a judgment. Fed. R. Civ. P. 59(e).

1. *Whether the Court should apply the holding in Lucero by the New Mexico Court of Appeals*

The parties agree that the New Mexico Supreme Court has not ruled on whether an insurance policy similar to the Policy provides coverage of $1,000,000 per covered vehicle if multiple covered vehicles are involved in a single accident. "When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule." *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002). If the highest state court has not yet issued a decision on the issue in question, "federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State." *Id.* at 1119 (quoting *Comm'r of Internal Revenue v. Bosch's Estate*, 387 U.S. 456, 465 (1967)). "The decision of an intermediate appellate state court is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940) (internal quotations omitted)).

Defendants argue that the Court should apply *Lucero* because it is the best predictor of how the New Mexico Supreme Court would rule. Plaintiff argues that the Court correctly ruled in the MOO and Order and that *Lucero* is not binding authority. After examining *Lucero* and the law of other states and the federal circuit courts,[2] the Court concludes that the New Mexico Supreme Court would most likely adopt the New Mexico Court of Appeals' ruling in *Lucero*. The Court, therefore, will apply the holding in *Lucero* to the facts in this case.

---

[2] *See* (Doc. 29) at 9 for a discussion of holdings from other jurisdictions.

By applying *Lucero*, this Court rejects Defendants' request to certify this issue to the New Mexico Supreme Court. *See Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988) ("Whether to certify a question of state law to the state supreme court is within the discretion of the federal court. Certification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law." (citations omitted)).

2. *Whether Plaintiff insured the Finney Farm tractor and trailer for $1,000,000 each under the Policy*

The Court must now apply the *Lucero* holding to the facts of this case. Identical to the insurance policy in *Lucero*, the Policy's declaration page states, "This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those 'autos' shown as covered 'autos.'" *Id.* at 21. The Finney Farms tractor and trailer involved in the accident are identified on the declaration page as covered autos and separately listed as COVERED AUTO NO 38 (trailer) and 49 (tractor). (Doc. 1-1) at 31, 35. The Policy's declaration page also shows that Finney Farms paid a separate premium for the tractor and trailer. (Doc. 1-1) at 23, 25. Next to the listing for the tractor and trailer, the Policy shows liability limits of $1,000,000. *Id.* For example, this information regarding the tractor is set forth in a chart in the Policy, as follows:[3]

ITEM THREE - SCHEDULE OF COVERED AUTOS YOU OWN

| COVERED AUTO NO | DESCRIPTION Year, Model, Trade Name, Serial Number or Vehicle Identification Number (VIN) | | Original Cost New* | TERRITORY Town & State where the Covered Auto will be principally garaged | Terr Code |
|---|---|---|---|---|---|
| 33 | 2006 YUKON GMC | 1GKEK63U76J110942 | $60,000 | FORT SUMNER, NM | 106 |
| 34 | 2004 TRAILER RED RIVR | 1TKLR43254W073948 | $50,000 | FORT SUMNER, NM | 106 |
| 35 | 2008 SEMI TRLR DOONAN | 1D9BG532381609391 | $29,000 | FORT SUMNER, NM | 106 |
| 36 | 2008 SEMI TRLR DOONAN | 1D9BG532581609392 | $29,000 | FORT SUMNER, NM | 106 |
| 37 | 1996 TRCK TRCT KENWORTH | 1XKDD69X7TJ686596 | $50,000 | FORT SUMNER, NM | 106 |
| 38 | 2008 SEMI TRLR DOONAN | 1D9BG532981609332 | $29,000 | FORT SUMNER, NM | 106 |
| 39 | 2002 UTLTY TRL LONE-CAR | 1L9CP18202S238441 | $1,500 | FORT SUMNER, NM | 106 |
| 40 | 1995 TRCK TRCT FRGHTLNR | 2FUYDZYB0SA538005 | $70,000 | FORT SUMNER, NM | 106 |

---

[3] The chart with information about the Finney Farms tractor is identically laid out except it is found four pages later in the Policy. *See* (Doc. 1-1) at 33.

8

| COVERED AUTO | LIABILITY | | PERSONAL INJURY PROTECTION | | ADDED PIP | OBEL (N.Y. only) | PROP PROT (Mich only) | |
|---|---|---|---|---|---|---|---|---|
| | Limit | Premium | Limit stated in each PIP End minus ded shown below | Premium | (Limit stated in each Added PIP End) Premium | (Limit Stated in OBEL End.) Premium | Limit stated in PPI End minus ded shown below | Premium |
| 33 | $1,000,000 | $366 | | | | | | |
| 34 | $1,000,000 | $19 | | | | | | |
| 35 | $1,000,000 | $19 | | | | | | |
| 36 | $1,000,000 | $19 | | | | | | |
| 37 | $1,000,000 | $418 | | | | | | |
| 38 | $1,000,000 | $19 | | | | | | |
| 39 | $1,000,000 | $19 | | | | | | |
| 40 | $1,000,000 | $418 | | | | | | |

COVERAGES-PREMIUMS, LIMITS AND DEDUCTIBLES (Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding ITEM TWO column applies instead).

The Policy explains the liability coverage identically as the insurance policy in *Lucero*: "We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'." (Doc. 1-1) at 31.

Finally, the Policy contains the same anti-stacking clause as the insurance policy in *Lucero*. Under the header "Limits of Insurance," the Policy states,

> Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

(Doc. 1-2) at 21.

Reading the Policy as a whole, the Court finds, as in *Lucero*, that a reasonable person in the insured's position would understand the Policy to provide $1,000,000 in liability coverage for each covered auto involved in an accident, even if it was the same accident. *See Rodriguez v. Windsor Ins. Co.*, 1994–NMSC–075, ¶ 12 ("[T]he test is not what the insurer intended its words to mean, but what a reasonable person in the insured's position would have understood them to mean."). The Policy's declaration page states that "*[e]ach* of these coverages will apply" to the listed covered autos, lists the covered autos, and beside each covered auto shows liability limits of $1,000,000. (Doc. 1-1) at 21 (emphasis added). It follows that each covered auto, including

9

the Finney Farms tractor and trailer, carry $1,000,000 in liability coverage.  However, the anti-stacking clause, if interpreted as Plaintiff contends, is contrary to this understanding and would eliminate coverage to all but one covered auto if multiple covered autos were involved in an accident.  Based on these conflicting interpretations, just as in *Lucero*, the Court finds that, as a matter of law, the Policy's provisions are ambiguous.  *See Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000–NMSC–033, ¶ 11, 12 P.3d 960 (insurance policy provisions ambiguous "when separate sections of a policy appear to conflict with one another"); *Richardson v. Farmers Ins. Co. of Ariz.*, 112 N.M. 73, 74, 811 P.2d 571 (N.M. 1991) (whether ambiguity exists is matter of law).  Plaintiff points to a section of the Policy which specifies that the Policy provides liability coverage of $1,000,000, under the heading "LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS."  (Doc. 1-1) at 21. Plaintiff correctly notes that the *Lucero* Court does not specify if the insurance policy in that case contained similar language.  This additional language in the Policy, however, does not eliminate the Policy's ambiguity.

"If the insurer issues an ambiguous policy, the ambiguities are construed against the insurer." *Rodriguez*, 1994–NMSC–075, ¶ 14.  Construing the ambiguities against Plaintiff, the Court holds that the Policy's anti-stacking clause limits Plaintiff's liability to $1,000,000 when "only one covered vehicle was involved in the accident." *Lucero*, 2014 WL 834831 at *19-20.  However, if two covered autos are involved in a single accident, the Policy's anti-stacking clause will not apply and liability limits may be aggregated.  Consequently, the Court amends its previous ruling and now holds that the total amount of liability coverage applicable under the Policy is $1,000,000 per covered auto involved in an accident.

*3. Whether both the tractor and trailer were involved in the March 24, 2011, accident*

Finally, having ruled that the total amount of liability coverage applicable under the Policy is $1,000,000 per covered auto involved in an accident, the Court must decide whether the Finney Farms tractor and trailer were both involved in the March 24, 2011, accident. As discussed in the MOO, the parties agree that the accident involved the Finney Farms trailer. However, the Court refrained from deciding whether the tractor was involved in the accident because it ruled that the Policy limited Plaintiff's liability on a per accident basis. Having revised that holding, the Court must now determine whether the tractor was involved in the accident.

In arguing that the tractor was involved in the accident pursuant to the Policy's terms, Defendants focus on language in the Policy which states that Plaintiff "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident', and <u>resulting from the ownership, maintenance, or use</u> of a covered 'auto'." (Doc. 6-3) at 4 (emphasis added). According to Defendants, the March 24, 2011, accident "result[ed] from the ownership, maintenance, or use" of the Finney Farms' tractor. Defendants analogize the Policy's language, "resulting from," to the phrase "arising out of the ownership, maintained or use" which is commonly used in automobile insurance policies. Defendants contend that the phrase "arising out of" is a "term of art" with a broad meaning. (Doc. 33) at 6. Although worded differently in the Policy, the Court finds no substantive distinction between the language in the Policy and that generally employed in insurance policies. The Court notes, specifically, that the plain meanings of "arising" and "resulting" are generally regarded as synonyms. *See, e.g., The Random House Webster's Unabridged Dictionary* 1643 (2d ed. 2001); *Heritage Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 657 So. 2d 925, 926-27

(Fla. Dist. Ct. App. 1995) (holding same); *see also United Nuclear Corp. v. Allstate Ins. Co.*, 2012-NMSC-032, ¶ 19, 285 P.3d 644 ("When a term is undefined in the policy, a reviewing court may look to that term's usual, ordinary, and popular meaning, such as found in a dictionary.") (citation and internal quotations omitted)).

In New Mexico, an insurance policy which states that the insurer will cover damages "arising out of ownership, maintained or use" applies to a covered vehicle involved in an accident when "the use made of the vehicle at the time of the accident logically flows from and is consistent with the foreseeable uses of that vehicle." *Am. Gen. Fire & Cas. Co. v. Progressive Cas. Co.* 1990-NMSC-094, ¶ 6, 799 P.2d 1113.  The Tenth Circuit Court of Appeals also broadly has interpreted the phrase "arising out of the use." *See Wyoming Farm Bureau Mut. Ins. Co., Inc. v. State Farm Mut. Auto. Ins. Co.*, 467 F.2d 990, 995 (10th Cir. 1972) ("We are convinced that the causal relationship need not be a direct one; that it is sufficiently connected if the act which causes the injury is incident to the use of the vehicle.").  Finally, several treatises on insurance law have recognized the broad meaning of the phrase "arising out of the use." *See, e.g.,* 7 Couch on Ins. § 101:52 (2013) (phrases "arising out of" and "resulting from" "do[] not require a direct proximate causal connection but instead merely requires some causal relation or connection."). [4]

The *Am. Gen. Fire & Cas. Co.* Court analyzed an insurance policy which stated that the insurer would pay damages for which the insured was legally liable "because of bodily injury and property damage caused by accident and <u>arising out of</u> the ownership, maintenance or use of

---

[4] *See also* 7 Am. Jur. 2d *Automobile Insurance* § 161 (2014) ("The phrase 'arising out of the use' affords coverage for injuries where the insured vehicle bears almost any causal relation to the accident at issue, however minimal."); 6B John Alan Appleman & Jean Appleman, *Insurance Law & Practice* § 4317, at 360 (Rev. ed. 1979) ("The words 'arising out of' when used in such a provision are of broader significance than the words 'caused by', and are ordinarily understood to mean originating from, incident to, or having connection with the use of the vehicle.").

your insured car or utility trailer." 1990-NMSC-094, ¶ 5. The accident at issue involved a man who suffered from multiple sclerosis that confined him to a wheelchair. *Id.* ¶ 2. Progressive provided automobile insurance coverage to the man's van that was equipped with a ramp, allowing him to be loaded into and unloaded from the van. *Id.* However, he required assistance to enter or exit the vehicle. *Id.* A female employee was injured when she attempted to move the man in his wheelchair onto the van's ramp and sued the man alleging that the man was liable for her injuries. *Id.* Subsequently, Progressive claimed that it provided no coverage for the man for the accident, claiming that the injury did not arise out of "ownership, maintenance, or use" of the insured vehicle. *Id.* ¶ 4.

The *Am. Gen. Fire & Cas. Co.* Court found that it was foreseeable that, in using the van, the man would have to enter into and exit from the vehicle, and, because he was confined to a wheelchair, loading him with the use of the ramp was reasonably foreseeable. *Id.* ¶ 10. Incidental to this foreseeable use was that he would need assistance. *Id.* The injury to the employee occurred while assisting the man to disembark. *Id.* Therefore, the Progressive automobile insurance covered the accident because "[t]he cause of the accident was reasonably connected to a use of the vehicle, and this accident was within the scope of Progressive's coverage." *Id.*

As discussed in the MOO, Jessie Hale left the Finney Farms commercial business in the early morning of March 24, 2011, driving a tractor with an attached trailer. As Hale drove onto U.S. Route 60, the trailer became unhitched from the tractor and settled on a lane of the highway. Upon learning that the trailer unhitched, Hale decided to make a U-turn in order to drive back around the Finney Farms property to get behind the dropped trailer to illuminate it. Hale thus left his trailer on the highway, unlit. Sometime between 5:15 a.m. and 5:30 a.m., Chavez was

driving his vehicle on U.S. Route 60. Apparently, while Hale drove around the Finny Farms property, Chavez's vehicle struck the unlit trailer and went off into an adjacent field. Chavez's vehicle did not strike the tractor driven by Hale.

Chavez's injuries were caused by the Finney Farms tractor unhitching from the Finney Farms trailer. This occurred while the tractor was transporting the trailer and its content along a public highway. Presumably, Finney Farms owns tractors in part to pull their trailers. The use of the Finney Farms tractor to transport its trailer along the highway logically flows from and is consistent with the foreseeable use of the tractor. Incidental to this foreseeable use of the tractor was the trailer becoming unhitched. The cause of the accident, therefore, reasonably was connected to the use of the tractor and within the scope of Plaintiff's coverage under the Policy. Consequently, the Court finds that as a matter of law, Plaintiff's liability to Defendants for the March 24, 2011, accident is $2,000,000.

In this case, Defendants present adequate evidence that there was an intervening change in the controlling law. Defendants' motion to reconsider, therefore, will be granted.

IT IS ORDERED that (1) Defendants' Motion to Reconsider (Doc. 31) is granted, and (2) declaratory relief will be granted in Defendants' favor.

_____
UNITED STATES DISTRICT JUDGE